**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**COURT FILE NO.: _____**
_____

MICHAEL FRISON,

                          Plaintiff,                              **COMPLAINT**

v.

                                                        **JURY TRIAL DEMANDED**

INTEGRITY SOLUTION SERVICES, INC.
and
BARB LAHO,

                    Defendants.
_____

## <u>INTRODUCTION</u>

1.    This action arises from Defendants' violations of the Fair Debt Collection
      Practices Act ("FDCPA" herein), 15 U.S.C. § 1692 *et seq.*

2.    The term "consumer" as used in this Complaint means any natural person
      obligated or allegedly obligated to pay any debt. Section 803(3) of the
      FDCPA, 15 U.S.C. § 1692a(3).

3.    The term "debt" as used in this Complaint means any obligation or alleged
      obligation of a consumer to pay money arising out of a transaction in which
      the money, property, insurance, or services which are the subject of the
      transaction are primarily for personal, family, or household purposes,
      whether or not such obligation has been reduced to judgment. Section 803(5)
      of the FDCPA, 15 U.S.C. § 1692a(5).

4.      The term "debt collector" as used in this Complaint means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

6.      Venue is proper in this district because the acts and transactions occurred in this district, Plaintiff resides in this district, and the Defendants transact business in this district.

## PARTIES

### Plaintiff

7.      Plaintiff Michael Frison (hereinafter "Plaintiff"), is a natural person residing in the County of Ramsey, State of Minnesota, and is a "consumer" as that term is defined by Section 803(3) of the FDCPA, 15 U.S.C. § 1692a(3), and/or a person affected by a violation of the FDCPA with standing to bring this claim under Section 803 of the FDCPA, 15 U.S.C. 1692k(a).

## Defendant Integrity Solution Services, Inc.

8.     Defendant Integrity Solution Services, Inc. (hereinafter, "Defendant Integrity"), is a Missouri corporation with its Chief Executive Office located at 20 Corporate Hills Dr., St. Charles, MO 63301.

9.     Prior to being known as Integrity Financial Services, Inc., Defendant Integrity was called "National Asset Recovery Services, Inc." and had affiliated companies called "Pinnacle Financial Group, Inc." and "Integrity Financial Partners, Inc." On January 28, 2013, Defendant Integrity issued a press release in which it announced the integration of its operating divisions and the merger of National Asset Recovery Services, Inc., Pinnacle Financial Group, Inc., and Integrity Financial Partners, Inc. under the single brand Integrity Solutions Services, Inc.

10.    Defendant Integrity is a "debt collector," as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

11.    The entity Pinnacle Financial Group, Inc. was a "debt collector," as defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

## Defendant Laho Doe

12.    Defendant Barb Laho (hereinafter, "Defendant Laho") is a natural person, employed at all times relevant herein as a "debt collector" as that term is defined in Section 803(6) of the FDCPA, 15 U.S.C. § 1692a(6).

3

13.     Defendant Laho was employed as a debt collector by the entity Pinnacle
        Financial Group, Inc. After the merger described in Paragraph 9 *supra*,
        Defendant Laho was employed as a debt collector by Defendant Integrity.

## FACTUAL SUMMARY

14.     On October 1, 2011, Plaintiff was a passenger in a motor vehicle which was
        involved in an accident.

15.     As a result of the October 1, 2011 motor vehicle accident, Plaintiff suffered
        injuries which required medical treatment.

16.     Pursuant to the October 1, 2011 motor vehicle accident, Plaintiff retained
        legal counsel to facilitate the processing of Plaintiff's no-fault benefits and
        payment of Plaintiff's medical bills.

17.     Plaintiff incurred medical bills to St. Paul Radiology as part of Plaintiff's
        treatment.

18.     Plaintiff's medical bills to St. Paul Radiology constitute a financial obligation
        that is a "debt" as that term is defined by Section 803(5) of the FDCPA, 15
        U.S.C. § 1692a(5).

19.     Sometime after receiving treatment, Plaintiff's medical bill owed to St. Paul
        Radiology (hereinafter, the "debt") was consigned, placed with, purchased
        by, or otherwise transferred to the entity Pinnacle Financial Group, Inc. for
        collection.

20.     Upon information and belief, St. Paul Radiology did not properly submit its
        bill to Plaintiff's no-fault insurance provider for payment.

4

21.   Plaintiff received a dunning letter at his home address, dated November 9, 2012, from Pinnacle Financial Group, Inc. regarding Plaintiff's debt to St. Paul Radiology.

22.   Plaintiff conveyed this dunning letter to his attorney's office on or about November 30, 2012.

23.   On November 30, 2012, Plaintiff's attorney sent a letter to Pinnacle Financial Group, Inc. advising that Plaintiff had an attorney and specifically requesting that all communications regarding the debt be directed to Plaintiff's attorney.

24.   The November 30, 2012 letter from Plaintiff's attorney additionally advised Pinnacle Financial Group, Inc. that in the event the debt was referred to another collection agency, Pinnacle Financial Group, Inc. should advise that agency "that this law firm represents [Plaintiff] regarding this matter and all other claims of indebtedness, and said agency or attorney should contact this law firm and not our client."

25.   On November 30, 2012, Plaintiff's attorney's office contacted Plaintiff's no-fault insurance provider and confirmed that St. Paul Radiology had yet to provie information requested by the no-fault insurance provider. Plaintiff's attorney's office then contacted St. Paul Radiology and notified them that Plaintiff's insurance provider had not received adequate billing information from St. Paul Radiology despite having requested that information from St. Paul Radiology.

26.     On December 4, 2012, Defendant Laho, an employee collection agent of Pinnacle Financial Group, Inc. called Plaintiff's attorney's office, requesting an update regarding payment of the debt. Plaintiff's attorney's office conveyed the status of the pending no-fault claim to Defendant Laho.

27.     On January 3, 2013, Defendant Laho called Plaintiff's attorney's office on behalf of Pinnacle Financial Group, Inc., requesting an update regarding payment of the debt. Plaintiff's attorney's office conveyed the status of the pending no-fault claim to Defendant Laho.

28.     On February 4, 2013, Defendant Laho called Plaintiff's attorney's office on behalf of Pinnacle Financial Group, Inc., requesting an update regarding payment of the debt. Plaintiff's attorney's office conveyed the status of the pending no-fault claim to Defendant Laho.

29.     Plaintiff received a dunning letter at his home address, dated February 13, 2013, from Defendant regarding Plaintiff's debt to St. Paul Radiology.

30.     Plaintiff conveyed this dunning letter to his attorney's office on or about March 1, 2013.

31.     On March 1, 2013, Plaintiff's attorney sent a letter to Defendant advising that Plaintiff had an attorney and specifically requesting that all communications regarding the debt be directed to Plaintiff's attorney.

32.     The March 1, 2013 letter from Plaintiff's attorney additionally advised Defendant that in the event the debt was referred to another collection agency, Defendant should advise that agency "that this law firm represents

6

[Plaintiff] regarding this matter and all other claims of indebtedness, and said agency or attorney should contact this law firm and not our client."

33. On March 12, 2013, Defendant Laho, now working for Defendant Integrity, called Plaintiff's attorney's office requesting an update regarding payment of the debt. Plaintiff's attorney's office conveyed the status of the pending no-fault claim to Defendant Laho.

34. Plaintiff received a dunning letter at his home address, dated April 18, 2013, from Defendant Integrity demanding payment of the debt. This letter was signed by Defendant Laho.

35. On May 20, 2013, Defendant Laho called Plaintiff's attorney's office on behalf of Defendant Integrity, seeking an update on the status of Plaintiff's no-fault benefits claim. Plaintiff's attorney provided Defendant Laho with an update of the claim.

**Violations of The Fair Debt Collection Practices Act**

36. Section 805 of the FDCPA prohibits a debt collector from directly communicating with a consumer when the debt collector knows the consumer is represented by an attorney, 15 U.S.C. § 1692c(a)(2).

37. Defendants had numerous telephone conversations with Plaintiff's attorney's office and received at least two (2) letters from Plaintiff's attorney. These communications provided Defendants with notice that Plaintiff was represented with regard to the debt.

38. Defendants knew Plaintiff was represented by an attorney regarding the debt.

7

39. A dunning letter sent to a consumer's home address is a "communication" as that term is defined by Section 803 of the FDCPA, 15 U.S.C. § 1692a(2).

40. Defendants directly communicated with Plaintiff by sending dunning letters to Plaintiff's home address.

41. By directly communicating with Plaintiff when Defendants knew that Plaintiff was legally represented regarding the debt, Defendants violated Section 805 of the FDCPA, 15 U.S.C. § 1692c(a)(2).

42. Plaintiff suffered actual damages under the FDCPA in the form of sleeplessness, fear of answering the telephone and door, embarrassment when talking to or seeing friends and family, and negative impacts on personal and professional relationships.

**Respondeat Superior Liability**

43. The acts and omissions of each Defendant, and/or the other debt collectors employed as agents by Defendant Integrity who communicated with Plaintiff- further described herein- were committed within the time and space limits of their agency relationship with their principal, Defendant Integrity.

44. The acts and omissions by each Defendant and/or these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Integrity in collecting consumer debts.

45.     By committing these acts and omissions against Plaintiff, each Defendant and these other debt collectors were motivated to benefit their principal, Defendant Integrity.

46.     Defendant Integrity is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its collection employees, including but not limited to violations of the FDCPA and Minnesota law, in their attempts to collect this debt from Plaintiff.

*Summary*

47.     The above-detailed conduct by each Defendant was a violation of numerous and multiple provisions of the FDCPA, including but not limited to the provisions of the FDCPA identified above.

48.     Each Defendant's negligent and/or intentional acts resulted in the violation of numerous provisions of federal law and resulted in actual damages to the Plaintiff.

**TRIAL BY JURY**

49.     Plaintiff is entitled to and hereby respectfully demands a trial by jury.  U.S. Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE
### FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

50.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

51.   The foregoing acts and omissions of each Defendant and its agents constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq., with respect to Plaintiff.

52.   As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each Defendant:

**COUNT I**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES**
**ACT**
**15 U.S.C. § 1692 et seq.**

53.    For an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against

each Defendant and for Plaintiff;

54.    For an award of statutory damages of $1,000.00 pursuant to 15 U.S.C.

§1692k(a)(2)(A) against each Defendant and for Plaintiff; and

55.    For an award of costs of litigation and reasonable attorney's fees pursuant to 15

U.S.C. § 1692k(a)(3) against each Defendant and for Plaintiff.

Respectfully submitted,

Dated:  July 3, 2013                    MARTINEAU, GONKO & VAVRECK, PLLC

 s/ Mark L. Vavreck                                          .
Mark L. Vavreck, Esq.
Bar Number #0318619
Attorney for Plaintiff
Martineau, Gonko & Vavreck, PLLC
Designers Guild Building
401 North Third Street, Suite 600
Minneapolis, MN 55401
Telephone:  (612) 659-9500
Facsimile:  (612) 659-9220
mvavreck@mgvlawfirm.com